IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-03195-PAB

MOUAD EL AHRACH,

    Petitioner,

v.

JUAN BALTAZAR, in his official capacity as warden of the Aurora Contract Detention Facility owned and operated by GEO Group, Inc.,
KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security,
ROBERT HAGAN,[1] in his official capacity as Acting Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement,
PAM BONDI, in her official capacity as Attorney General, U.S. Department of Justice, and
TODD LYONS in his official capacity as Acting Director of Immigration and Customs Enforcement (ICE),

    Respondents.

---

## ORDER

---

This matter comes before the Court on the Verified Petition for Writ of Habeas Corpus [Docket No. 1].[2]  The Court has jurisdiction pursuant to 28 U.S.C. § 2241.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Robert Hagan is automatically substituted as a party in this action.

[2] Neither party requested a hearing on this matter.  A federal court is not required to hold a hearing on a habeas petition.  *See Semien v. United States*, 746 F. App'x 303, 308 (5th Cir. 2018) ("A federal habeas court is not required to conduct an evidentiary hearing."); *Erikson v. Rowland*, 991 F.2d 803, 1993 WL 128865, at *4 (9th Cir. Apr. 26, 1993) (unpublished table decision) ("The district court is not required to hold an evidentiary hearing when considering habeas corpus petitions."); *Davis v. Kobach*, 2023 WL 2375111, at *5 (D. Kan. Mar. 6, 2023) ("Petitioner . . . has no right to a hearing in a federal habeas matter, nor is it standard practice for the Court to hold such hearings.").

## I. BACKGROUND[3]

On July 2, 2024, petitioner Mouad El Ahrach entered the United States at the southern border, seeking refuge from severe family abuse. Docket No. 1 at 8, ¶¶ 31-33, 35; Docket No. 14 at 2. Ms. El Ahrach is a 25-year-old transgender woman who is a citizen of Morocco. Docket No. 1 at 5, ¶ 17; Docket No. 14 at 2. Her family began habitually physically abusing her at the age of 13, due to their belief that she was gay. Docket No. 1 at 8, ¶ 31. Ms. El Ahrach fled Morocco after her brother attempted to murder her by attacking her with knife. *Id.* On July 3, 2024, one day after entering the United States, Ms. El Ahrach was encountered by the United States Customs and Border Protection and was detained for entering the country without valid entry documents. Docket No. 14 at 2-3.

The United States Citizenship and Immigration Services ("USCIS") sought Ms. El Ahrach's removal. Docket No. 14 at 4. Ms. El Ahrach applied for relief from removal. *Id.* at 5. On April 7, 2025, an immigration judge conducted a hearing and ordered Ms. El Ahrach removed from the United States to Morocco, but granted Ms. El Ahrach withholding of removal to Morocco under 8 U.S.C. § 1231(b)(3) because it was more likely than not that Ms. El Ahrach would face persecution in Morocco due to her sexual orientation and gender identity.[4] Docket No. 1 at 8, ¶ 33. After the April 7, 2025 hearing, Ms. El Ahrach's removal order became administratively final. *Id.*, ¶ 34; Docket No. 14 at 4. Respondents claim that, on April 9, 2025, they solicited Mexico, Panama,

---

[3] The following facts are undisputed unless otherwise noted.
[4] When a noncitizen is granted withholding relief, she may not be removed to the country designated in the removal order. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021). Instead, the noncitizen can only be removed to a third country. *Id.* at 531-32.

and Guatemala to accept Ms. El Ahrach.[5] Docket No. 14 at 4. However, respondents did not inform Ms. El Ahrach of these efforts, despite her repeated inquiries into whether third country removal was being pursued. Docket No. 1 at 9-10, ¶¶ 40, 43-44; Docket No. 15 at 3. Respondents have not received responses from these potential third countries. Docket No. 14 at 4.

Ms. El Ahrach argues that she was entitled to a Post Order Custody Review ("POCR") within 90 days of her removal order becoming administratively final, namely, by July 6, 2025. Docket No. 1 at 9-10, ¶¶ 38, 41; *see also* 8 C.F.R. § 241.4(k)(1)(i). However, this POCR was never conducted. Docket No. 1 at 9-11, ¶¶ 38, 41, 47. Respondents state that the POCR did not occur because of an "administrative oversight." Docket No. 14 at 5. Ms. El Ahrach's POCR was conducted on October 10, 2025.[6] *Id.* Based on the POCR, ICE determined that Ms. El Ahrach was a flight risk. *Id.* Ms. El Ahrach claims that, had an ICE official asked, she would have informed them that she has a sponsor she plans to live with, that she is willing to provide her address, and that she will go to ICE check-ins. Docket No. 15-1 at 3, ¶ 11.

On October 10, 2025, Ms. El Ahrach filed a petition for a writ of habeas corpus requesting her immediate release. Docket No. 1. On October 31, 2025, respondents filed their response. Docket No. 14. On November 7, 2025, Ms. El Ahrach filed a reply. Docket No. 15.

---

[5] Mexico, Panama, and Guatemala would be considered "third countries." In the context of immigration proceedings, a "third country" refers to a country not previously designated by an immigration judge or by the Department of Homeland Security ("DHS") during the underlying removal proceedings. Docket No. 1 at 13, ¶ 57.

[6] This is the same date Ms. El Ahrach filed her habeas corpus petition. *See* Docket No. 1.

3

## II. LEGAL STANDARD

When a noncitizen is ordered removed from the United States, removal should ordinarily be effectuated within a period of 90 days, known as the removal period. 8 U.S.C. § 1231(a)(1); *see also Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir. 2005). During the removal period, the noncitizen must be detained. 8 U.S.C. § 1231(a)(2)(A). After the removal period has expired, the noncitizen "may be detained." 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered whether this language permitted indefinite detention. The Court noted that, "while 'may' suggests discretion, it does not necessarily suggest unlimited discretion. In that respect the word 'may' is ambiguous." *Id.* at 697. The Court did not find any evidence that demonstrated congressional intent to authorize indefinite detention. *Id.* at 699. Additionally, the Court observed that:

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.

*Id.* at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Court "interpret[ed] the statute to avoid a serious constitutional threat" and "conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Recognizing the traditional deference shown to the executive branch in foreign policy, the Court found it "practically necessary to recognize some presumptively reasonable period of detention." *Id.* at 700-01. The Court held that it is presumptively reasonable to detain a noncitizen for six months to effectuate

4

removal. *Id.* at 701. After six months, the noncitizen challenging detention bears the initial burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Once she does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.* If the government meets its burden, continued detention is permitted; however, if the government fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must be released. *Id.*

*Zadvydas* dealt with a noncitizen who was deemed removable after gaining admission to the United States. *Id.* at 682. However, its holding has since been expanded to apply to noncitizens who are deemed inadmissible. *Clark v. Martinez*, 543 U.S. 371, 378-379 (2005); *see also Morales-Fernandez*, 418 F.3d at 1123-24 (noting that *Clark* expanded the holding of *Zadvydas* to apply to inadmissible noncitizens and granting an inadmissible noncitizen's habeas petition).

The government should remove noncitizens to either: (i) the country of which the noncitizen is a citizen, subject, or national; (ii) the country in which the noncitizen was born; or (iii) the country in which the noncitizen has a residence. 8 U.S.C. § 1231(b)(1)(C)(i)-(iii). If removal to any of those countries is impracticable, inadvisable, or impossible, then removal can be to any country with a government that will accept the noncitizen into its territory. 8 U.S.C. § 1231(b)(1)(C)(iv). However, noncitizens may not be removed to a country if the Attorney General decides that their life or freedom would be threatened in that country because of the noncitizens' race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A).

5

III. **ANALYSIS**

Ms. El Ahrach raises three separate grounds for relief, claiming that each justifies her immediate release. Docket No. 1 at 26-29, ¶¶ 114-133. First, she claims that her current detention is unlawful under *Zadvydas*. *Id.* at 26-27, ¶¶ 114-121. Next, she claims that her current detention violates her procedural due process rights under the Fifth Amendment. *Id.* at 27-28, ¶¶ 122-125. Finally, she claims that her current detention violates her substantive due process rights under the Fifth Amendment. *Id.* at 28-29, ¶¶ 126-133. In their response, respondents note that *Zadvydas* "set a unitary due process standard to govern when the government may detain a noncitizen more than six months under a final order of removal," namely, "whether there is a significant likelihood of removal in the reasonably foreseeable future." Docket No. 14 at 11. Thus, respondents claim that the constitutionality of Ms. El Ahrach's continued detention should be evaluated solely under that standard.[7] *Id.*

    A. **Constitutionality of Continued Detention under *Zadvydas***

Ms. El Ahrach has been detained for over seven months since the issuance of her April 7, 2025 removal order. Thus, the presumptively reasonable six-month

---

[7] Because the Court will grant habeas relief on Ms. El Ahrach's *Zadvydas* claim, it need not address her other due process claims or determine the appropriate standard for analyzing those claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

timeframe for effectuating her removal under *Zadvydas* has expired.  However, respondents claim Ms. El Ahrach has not met her initial burden to "provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  Docket No. 14 at 9 (citing *Zadvydas*, 533 U.S. at 701) (alterations and emphasis omitted).  This standard does not require Ms. El Ahrach to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable."  *Zadvydas*, 533 U.S. at 702.  Rather, she simply must show that removal is not significantly likely in the reasonably foreseeable future.  *Id.* at 701.  Courts tend to require that petitioners put forth specific evidence to meet this standard.  *Quang Minh Lien v. Sessions*, No. 18-cv-2146-WJM-SKC, 2018 WL 4853339, at *5 (D. Colo. Oct. 5, 2018) ("conclusory allegations are not 'good reason[s]' to believe that Petitioner will not be removed in the reasonable foreseeable future.") (citation omitted).

      The Court finds that Ms. El Ahrach has met her burden to provide the Court with good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  It is undisputed that Ms. El Ahrach has been in post-removal detention since the immigration judge ordered withholding of removal over seven months ago, on April 7, 2025.  Docket No. 1-1 at 2; Docket No. 1 at  20, ¶ 87; Docket No. 14 at 4.  On July 18, 2025, ICE notified Ms. El Ahrach's counsel that Ms. El Ahrach was being transferred to another ICE facility.  Docket No. 1-2 at 12.  On August 23, 2025, Ms. El Ahrach's counsel learned that she was transferred back to the Aurora facility.  *Id.* at 9-10.  An ICE officer informed Ms. El Ahrach's counsel that

7

this transfer was not for third country removal. *Id.* at 9. In fact, in a declaration,[8] Eliasib Luna—a deportation officer assigned to Ms. El Ahrach's case—stated that ICE made no efforts to remove Ms. El Ahrach beyond soliciting acceptances from Mexico, Guatemala, and Panama on April 9, 2025. Docket No. 14-1 at 4, ¶ 14. Thus, the Court has good reason to believe that she will not be removed in the reasonably foreseeable future. Therefore, the burden shifts to respondents to present sufficient evidence to show that removal is likely. *Zadvydas*, 533 U.S. at 701.

Respondents argue that, even if Ms. El Ahrach met her initial burden, her continued detention is nevertheless permissible because they have sufficient evidence to show that Ms. El Ahrach's removal will occur in the reasonably foreseeable future. Docket No. 14 at 9. In his declaration, Mr. Luna states that ICE contacted the governments of Mexico, Guatemala, and Panama on April 9, 2025 about allowing Ms. El Ahrach into their countries. Docket No. 14-1 at 4, ¶ 14. However, Mr. Luna concedes that ICE has not yet received responses from any of these countries. *Id.* Mr. Luna's declaration states that "ICE anticipates that it will pursue additional options for Petitioner's removal to a third country," but acknowledges that "additional third countries for Petitioner's removal have not yet been identified." *Id.* at 5, ¶ 25. Finally, the declaration states that ICE will provide the Court with a status report in thirty days regarding its progress on third country removal efforts. *Id.*, ¶ 26.

---

[8] Mr. Luna's declaration, purportedly made under 28 U.S.C. § 1746, is deficient because it is not made under penalty of perjury.

Nothing in Mr. Luna's declaration effectively rebuts Ms. El Ahrach's belief that removal is not likely in the reasonably foreseeable future.  *Zadvydas* rejected the proposition that continued detention is permissible "as long as good faith efforts to effectuate . . . deportation continue."  533 U.S. at 702 (internal quotations and citation omitted).  Instead, the government must actually make legitimate progress towards removal.  *See Hassoun v. Sessions*, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) (stating that "the reasonableness of Petitioner's detention turns on whether and to what extent the government's efforts are likely to bear fruit.  Diligent efforts alone will not support continued detention.").  Here, respondents have not shown any progress.  In fact, the only evidence respondents provide to show that they are pursuing Ms. El Ahrach's removal is the April 9, 2025 outreach to Mexico, Guatemala, and Panama.  Docket No. 14-1 at 4, ¶ 14.  However, this solicitation prompted no response, and respondents do not claim that ICE has followed up on these efforts.  Moreover, Ms. El Ahrach's status as a transgender woman further complicates any efforts to remove her to a third country because it increases her risk of persecution in many parts of the world.[9]  Docket No. 1 at 21, ¶ 91.  This makes it even less likely that her removal will occur in the reasonably foreseeable future.  Ms. El Ahrach cannot be removed to a given country if the Attorney General decides her life or freedom would be threatened because of her membership in a particular social group.[10]  8 U.S.C. § 1231(b)(3)(A).

---

[9] It was for this very reason that she was granted withholding of removal to Morocco.  Docket No. 1 at 2, ¶ 4.

[10] In May 2025, the United States District Court for the District of Massachusetts issued a preliminary injunction requiring the government to provide notice and a meaningful opportunity to present fear-based claims before removing a noncitizen to a third country.  *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 364 (D.

Next, respondents have not committed to continuing their search for a third country that will accept Ms. El Ahrach.  Rather, they only "anticipate" that they will do so.  Docket No. 14 at 10.  Respondents provide no further information about how they might undertake that search.  Respondents do not identify which countries they might contact next, fail to explain how they will follow up with the countries they already reached out to, and list no concrete steps they will take to effectuate Ms. El Ahrach's timely removal.[11]  Instead, they offer to provide a status report in thirty days providing an update on their progress.  *Id.*  However, respondents provide no

---

Mass.), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025).  However, the Supreme Court stayed the preliminary injunction pending disposition of the appeal to the First Circuit and disposition of a petition for a writ of certiorari in the Supreme Court.  *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).  Nonetheless, internal DHS guidelines still provide procedural protections to noncitizens before being deported to a third country.  Docket No. 1 at 14, ¶ 62; Docket No. 1-4 at 2-3.  Under these guidelines, the government must receive credible assurances from the third country that the noncitizen will not be persecuted or tortured.  Docket No. 1-4 at 2-3.  If the government does not receive these assurances, or if the Department of State does not believe them to be credible, then DHS must inform the noncitizen of removal to the third country.  *Id* at 3.  After the Supreme Court granted the stay in *D.V.D.*, ICE issued a memorandum further reinforcing that "ICE must adhere" to this policy.  Docket No. 1 at 15, ¶¶ 66-67; Docket No. 1-5 at 2.  This memorandum specifies that noncitizens have an opportunity to raise fear-based claims if the third country did not give credible assurances of their safety.  Docket No. 1-5 at 3.  Thus, it would be contrary to DHS policy if Ms. El Ahrach was removed to a third country that did not give credible assurances of her safety without being given notice and an opportunity to raise fear-based claims.

[11] Courts have found that unsubstantiated assertions that the government will pursue removal are insufficient to satisfy its burden.  *See Vaskanyan v. Janecka*, 2025 WL 3050075, at *3 (C.D. Cal. Sept. 10, 2025) ("That the government was 'pursuing the possibility of removing Petitioner to Armenia' did not show that Petitioner's removal was likely in the reasonably foreseeable future.  In fact, that position—that a showing of continued good faith efforts to effectuate deportation is sufficient to prolong detention—was squarely rejected by the Supreme Court in *Zadvydas* as 'demand[ing] more than our reading of the [INA] can bear.'") (internal citation omitted); *Ahmed v. Freden*, 744 F. Supp. 3d 259, 267 (W.D.N.Y. 2024) ("DHS's active efforts to obtain travel documents from Pakistan are not enough to demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the Court contains no information to suggest a timeline on which such documents will actually be issued.").

reason to believe her removal would be any closer in another thirty days.  Other courts have granted habeas petitions under *Zadvydas* when the government has not offered evidence that there is progress towards removal.  *See S.F. v. Bostock*, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025) (finding the government's evidence that the petitioner "could be a candidate" for a scheduled charter flight to Iran "speculative" and "insufficient to rebut Petitioner's showing that removal is not significantly likely within the reasonably foreseeable future."); *Vaskanyan v. Janecka*, 2025 WL 2014208, at *5 (C.D. Cal. June 25, 2025) (finding that petitioner's pending citizenship application to Armenia was insufficient to rebut petitioner's showing even when "the government may receive a response from Armenia in the near term"); *Hassoun*, 2019 WL 78984, at *5 (finding that the government had not met its burden when it had four requests for travel documents from third countries pending for about five months and only made "general and vague" assertions regarding the status of those requests).  Here, respondents have not provided concrete evidence that removal is likely in the foreseeable future, nor have they committed to continue pursuing such removal.  Accordingly, they have not rebutted Ms. El Ahrach's showing that she has good reason to believe removal is likely in the reasonably foreseeable future.  Ms. El Ahrach has been in post-removal detention for over seven months, and the Court finds that her continued detention contravenes *Zadvydys*.

      Finally, respondents indicate that they have continued to hold Ms. El Ahrach because she is a significant flight risk.  Docket No. 14 at 13.  However, under *Zadvydas*, whether Ms. El Ahrach is a flight risk has no bearing on the constitutionality of her continued detention.  One of the petitioners in *Zadvydas* had

11

a history of flight from both criminal and deportation proceedings.  533 U.S. at 684.  Nevertheless, the Supreme Court held that preventing flight provides a "weak or nonexistent" justification for indefinite civil detention "where removal seems a remote possibility at best."  *Id.* at 690.  Thus, even if Ms. El Ahrach does present a flight risk, that fact does not permit her continued detention when there is no evidence that removal is likely in the reasonably foreseeable future.  Therefore, the Court will grant Ms. El Ahrach's habeas petition and order her release.[12]

## IV.  CONCLUSION

Accordingly, it is

**ORDERED** that the Verified Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**.  It is further

**ORDERED** that Ms. El Ahrach shall be released from custody on or before **December 3, 2025**.

DATED November 19, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[12] Ms. El Ahrach also requests that the Court award her costs and attorney fees.  Docket No. 1 at 30.  Pursuant to the Local Rules of Practice for the United States District Court of the District of Colorado, Ms. El Ahrach must make this request in a separate motion.  *See* D.C.COLO.LCivR 54.3; D.C.COLO.LAPR 16.1(b).